Case number 15-1354. All American Telephone Company, Inc. et al. Petitioners v. Federal Communications Commission et al. Mr. Canis for the petitioners, Mr. Pasch for the respondent. Good morning. My name is John Canis. I represent the petitioners in this case, three service providers. In February 2007, these carriers filed a collection action in the Southern District of New York against AT&T. They asserted that they provided service to AT&T, for which AT&T did not pay. The judge in that case, William Pauly, referred questions to the FCC under primary jurisdiction. In March of 2008 and February of 2009, Judge Pauly referred a total of 15 questions to the Federal Communications Commission. The FCC started a formal complaint proceeding to address those issues and to respond to the court. Four years later, the FCC issued its first order, the liability order. It found in that case that the tariff rates did not apply. Did you challenge the FCC's jurisdiction in the liability order? In the liability order? But you say they have no jurisdiction over the damages order, right? That's correct. I don't understand that. By dent of what they found in the liability order, they looked at the test of a common carrier under the Federal Communications Act. And your clients had held themselves out as common carriers, right? They believed they were common carriers. And they were not disabused of that knowledge. Isn't that enough on the damages order, that they had held themselves out as common carriers? Not at all. What the brief for the respondents basically says is ignore the statutory definition of common carrier. They said it adds nothing. In fact, they posit a brand new theory of exercising jurisdiction. They said the petitioners thought they were common carriers. They held themselves out as common carriers. Therefore, they must be common carriers. If substantive belief and actions are enough to confer common carrier status, then anybody who believes they were a common carrier could collect universal service subsidies. Why wouldn't you have said during the liability proceeding that the first thing you decide is common carrier? And if you decide we're not common carriers, you can't do anything else even on liability. Shouldn't you have challenged their ability to do anything beyond the liability? Just saying once you decide we're not common carriers, you don't get to decide anything else. Well, and the consequences of that decision were considered in the damages order. So why shouldn't they have just had a we find that you're not a common carrier and stop there? Were they permitted to say anything else after that? Well, we asked them to on reconsideration, Your Honor, and they declined. They said that that issue was not right. And then when we raised that again in the damages proceeding, they dismissed it. They cited this court's decision in farmers and merchants. And they said, well, that would be absurd. You can't say I violated the communications of the FCC's rules. Therefore, I am insulated from the commission's rules. But that's not the issue here. If they had not bifurcated the proceeding, if they had just done a single proceeding with everything in it, would you have the same argument? If they came up with the same theory, what they did in the liability case is we saw the benefits of being a common carrier, the benefit of being able to file a tariff, to collect regulated access fees under that tariff, and using the filed rate doctrine. They said you are not a common carrier. You don't meet the definition of common carrier. Therefore, all those benefits are not available to you. In the damages order, they ignored all that and said, well, we can deny you the benefits because you're not a common carrier, but we can still impose all the detriments. We can subject you to a way formal complaint. We can subject you to damages under 209, all these Title II applications. And our argument is you can't have it both ways. Okay. I'm sorry. Are you going to follow up on that issue? No, you go ahead. Okay. Let's assume we don't agree with you about that. I want to ask you about your argument that the commission inappropriately, improperly decided to question state law, right? I mean, that's your major argument here, right? Yes, sir. And does that – do you have paragraph 13 in front of you from the commission's order? Of the damages order? Yeah. Do you have it there? So am I right that you're relying on this paragraph that begins, even assuming, correct? That's where you're – this is your argument, right? I'm sorry. I'm sorry. You're right. I was getting my case. All right. Paragraph 13. Even assuming they can make these arguments, defendants have failed to establish. That's your case, right? Yes, sir. Right? Okay. So I just want to ask you about how I read this, and you tell me what's wrong with it. So right before that, in the paragraph before that, the commission ruled in a section that you don't challenge that your client didn't provide any services, right? Yes, sir. And you don't challenge that at all. Okay. So then in the paragraph after that, right, in the paragraph after that, the commission goes on and rejects your alternative position, right? That notwithstanding that, your client did provide a service to AT&T that was valuable, right? And they reject that because, number one, they say there's no evidence for it, and number two, they say a common carrier can't provide untariffed or uncontacted services. Yes. Right? Mm-hmm. Okay. And then at the end it says, therefore, the other issue certified by the district court, and it's number whatever it is, three, the state one, is moot. Right. So it didn't decide the state law question. It said it didn't have to because of what I just explained. The issue was just unresolved. Well, that's the essence of the ambiguity here. Wait, what's ambiguous about that? Tell me what's ambiguous about what I just said. All right. Okay? So let's look at paragraph 21, section G. The remaining issues of the court are predicated on the assumption that defendants provided a service, right? We found they did not provide a service. Therefore, the issue by the court is moot. Unless the FCC preempted those state claims. No, no. What the FCC said was they're moot because, again, it's just the way I read it. Mm-hmm. It's moot because for two reasons. One is there's no evidence that your client actually provided any service anyway.  There was no evidence of that. And in any event, they say, a common carrier under the Federal Communications Act can't provide any service other than through attack. Therefore, your state law claim is, quote, moot. They didn't decide. So what's the matter? I don't see anything ambiguous about that. Well, the ambiguity comes to what does the FCC mean when it says we did not provide service? What the FCC found was we did not provide service pursuant to our tariff. Their decision was purely that we did not provide a cognizable regulated service within the definition of our tariff that is compensable through federal regulated access charges. That is what they found. The record is very clear. There are stipulations by the parties that a service was actually provided, right? So the FCC acted within the area of its expertise and said we are interpreting our own rules, our own tariffs, and we do not recognize the service as a regulated service compensable through tariff rates. That is their finding. The ambiguity comes in the fact that they said – Is it your argument that that finding is somehow binding on the federal district court in New York? It cannot be, but the FCC will – Then what's the harm? Then what's the harm, Mark? Because the FCC will not say it. I'm sorry. What's the harm? If the finding has no authority in the Southern District of New York, it's not binding in any way, then what's the harm to your finding? The harm is that I'm going to go back to the Southern District of New York, and AT&T has already told you exactly what it's going to tell Judge Pauling, that the FCC did, in fact, preempt by dint of the filed rate doctrine, by dint of field preemption because its regulatory regime is so – It's not preclusive in any way. You're not arguing – It is not, and that is the legal answer, but AT&T is going to argue that before Judge Pauling, and unless there's a clear decision from the FCC, at a minimum, I'm going to have to defend those arguments, and at worst, Judge Pauling could make a decision that is absolutely the wrong decision as a matter of law. Why would this Court countenance that kind of an outcome where the answer is absolutely clear? It's a yes-or-no answer, and I don't know why the FCC will not answer this question, but I can tell you the effect. My collection action has been stayed for 10 years as a result of eight years directly attributable to the FCC's refusal to answer this very straightforward question. What's the source of your preemption argument? Say it to me once again. What did they preempt? The FCC says – Judge Pauling said if the tariff doesn't apply, can these carriers, entities, pursue claims under quantum merit or unjust enrichment under state law? The FCC says that's moot. It's moot because we found they didn't provide any service, which suggests – But that's what this informer, the commission quotes the statute as saying, Section 203, it makes it unlawful for a common carrier provision of service to provide service outside of its tariff. Can't do it. That's true. And the FCC was speaking within its area of expertise. You can't provide regulated service for which you can collect access charges under your tariff. That's the area of expertise, and that's the only area where the FCC could make a decision within its expertise. Other issues, whether service compensable under state law falls within the expertise of the state, and the FCC cannot. And what type of service did your clients provide? That's going to have to be decided. They worked at whether you want to define it as agents. They were directly responsible for causing service to be provided to AT&T. They worked with Beehive Communications, so the FCC found was the service provider. The question is, were we a reseller, were we an agent? That's going to have to be determined in court. Is part of your concern, then, that the commission said there was no evidence you were a billing or sales agent as well? Is that within their wheelhouse? No, I consider that, Deputy Your Honor, and I don't see that dispositive or binding on the Southern District at all. Okay, thank you. We'll hear from the commission. Good morning, Your Honors. My name is Craig Page, and I'm a counsel for the Federal Communications Commission. If I could address a couple of factual points to begin with. One, the most significant one, is Mr. Canna's assertion that what we know is some service was provided to AT&T. I guess we do know that. What we also know is that All American didn't provide that service. The record is clear to that. The commission had two holdings. The commission said you did not provide service pursuant to a lawful tariff. Your tariff that you filed with the FCC would not have permitted you to provide this service. And in any event, the record is clear that you did not provide any service to AT&T. You billed AT&T for $13 million of service. AT&T paid you a quarter of a million dollars. You didn't provide them any service. So that was in the liability orders. All American has not challenged those. That's the final order. Now, they can go back to the district court and argue that they provided some service, or they can argue that they were billing and collection agents. The commission rejected those arguments. As to the billing and collection issue, the commission said, look, there's no evidence that you did this. It was up to you to deduce evidence. Is that part of the FCC's area of expertise, whether they were acting as billing agents as opposed to becoming carriers? It's part of the – well, the commission was responding to All American's presentation of that point as a defense. So I think it certainly was within the commission's area of expertise to determine the facts related to that, and it didn't say we reject your interpretation of these facts. It said you didn't induce any facts at all. So you would disagree with him, then? You would say that there's a conclusive commission determination that they are not billing or service agents. It's not just dicta? No, it's not dictum. It's in response to a claim that they made. Determination by the commission. Right. And I would point out that All American did not raise this point until the damages phase of the proceeding. They never – so far as I know, and I think that's what the commission's order said. Do you think it's binding on the Southern District, then? It's not dictum? I don't think it's necessarily binding. I think the only record that – well, there is no record on it. So I think the Southern District would have to allow petitioners to deduce additional evidence some way. But I don't think it's binding in the sense that the Southern District couldn't look at the evidence before it. If there is any, I don't think there is any. But if there weren't, you could make a different determination. I mean, it's clear – I'm sorry. Did I read this order correctly? That the state law question the commission ultimately decided was moot because there was no service provided, and in any event it couldn't be provided outside of a tariff? Yes. Is that the correct reading? No, that is the correct reading. So everything would have been a lot easier if the commission had included this even-assuming paragraph, wouldn't it? Even-assuming. It would have been a lot easier without that paragraph. Oh, yes. I think that's probably – Do you agree with that? I know you didn't write the order, but – I think that's probably true. Yeah. I appreciate – it's nice to have the commission thorough, but it does cloud its decision here a little bit. In fact, we've got a whole petition for review based on somebody seeking to be extremely thorough in putting that paragraph in there. Well, I suspect the petition for review would have come regardless, but – My only point is it would have been easier for us without it. All right. I'll make a note of that for future orders. But I – I mean, I think the commission was – because of the litigious nature of this proceeding, I think the commission was trying to address every question and maybe address a question that it didn't need to. But – It didn't need to or didn't have authority to. Well, the commission was attempting to avoid deciding a state law claim that it didn't think it either needed to or was responsible for deciding. Yeah, but wait a minute. Wait a minute. Going back to what Judge Millett asked you, you know, I asked you about the paragraph because I thought it clouded things. But, I mean, it actually does on its face purport to decide a state law question, which it later says is moot. That's our point about this paragraph. Well, I would not characterize it that way, Judge Tate. It says defendants have failed to establish the necessary elements for unjust enrichment. And then it cites – and then it cites AmJur or something like that, which we don't see that often here. No, but what the commission was doing – all Americans presented the unjust enrichment quantum merit claim as a defense to AT&T's damages. That's why the commission felt it was obligated to respond to it in that context. Maybe it could have stopped. What do you mean in that context? Does that mean that you think the SEC did have authority to decide that state law claim and rule that it was not a viable defense? Is that your understanding of the – even assuming sentence? No, I think what the commission was attempting to say was that in response to the defense that all Americans had presented to AT&T's complaint under the Communications Act, the commission was saying that, number one, it said that equitable doctrines don't apply in complaint proceedings, and maybe it should have stopped there. But it also said the record showed that you provided no service, and the concept of unjust enrichment quantum merit requires that you have provided such service. It wasn't – I guess that – Why would they be venturing into that area? Well, they started into the area because the argument was very spell-American, and they felt – That's not the dispute that's before. It's obvious that would have been a better response, but I don't think that makes the commission's decision arbitrary and capricious, even if it went further than it had authority to do. What I don't think the commission was attempting to do was decide a state law equitable action. The commission was simply trying to say that for purposes of what we're deciding here and trying to answer the question that had been presented by all Americans. This is our view of how the unjust enrichment – Is it too colloquial to point out that – Tidge and Millett taught me this, the famous Will Rogers quote, never miss a good opportunity to shut up. It's an excellent quote. I don't think he's talking about you. He's talking about your concept. Thank you for that. If I could provide you with a short anecdote. I was making an argument with Judge Spotswood-Robinson many years ago, and I answered a question, and he said, Mr. Pash, I would have thought from your brief that you would have given precisely the opposite answer to that question. So there are times when – What did you then say? I didn't say I'd like to go back and start over. Can I ask you a question about the finding of sham entity? I'm just having a little trouble understanding what the commission meant by that. Does that mean – I take it that means from the description you've given here that they were just beehive in disguise. They were just a front door concoction for beehive. Is that an accurate understanding? Yes. And I think that's – I think it's pretty clear from the record. The record and the liability order that All-American has not checked. Okay. All right. And so it's – No, you can finish your sentence. So the point here is that the services were provided to them. It was just beehive dressed up as All-American. The services were provided. Somebody connected the calls. The record, I think, demonstrates the services were provided by beehive. And, in fact, the billing was provided by beehive, but it was on behalf of All-American. If the court has any questions on the jurisdiction issue, I'm happy to address it. I think it's a frivolous point, but – Okay. Do you have nothing else on the merits? You don't have to – No, if the court doesn't have questions. No? Okay. Did counsel have any time left? Okay. You can take two minutes if you'd like. Thank you, Your Honor. Very briefly, you know, there was discussion about whether the FCC addressed state issues of unjust enrichment. As this court knows, the FCC was never before the FCC because the FCC cannot hear claims against AT&T. AT&T, in this case, as was determined in the All-American v. AT&T decision, is acting not as a regulated carrier subject to the Title II jurisdiction of the FCC. It is acting as a private customer. And, therefore, the FCC – Can I ask you about – I'm sorry. The thing that's confused me is that, if I've got this procedural history wrong, tell me, was that I thought you all were the ones that asked the district court to certify the quantum merit decision to issue to the FCC. Am I wrong about that? My question three, if plaintiffs did not provide a regulated service, are plaintiffs entitled to be – Yes. Compensation under a quantum merit clause? Yeah. And so you asked them to do that. I did. Those questions were drafted, some by Judge Pauly, some by me, some by AT&T. I wanted that question explicitly before the FCC because I knew the answer to that. And Judge Pauly did not. The answer is the FCC cannot decide that issue? The FCC cannot determine – cannot preempt state law claims to be heard by a federal district court. So why would you ask a federal district court to certify to the FCC under a primary jurisdiction? Because I wanted that – I wanted that clarified on the record. Remember, we're dealing in a case – this is a series of about 24 federal court cases across the country that all have – are dealing with the same issue, and the district courts are split on this. Half of the district courts have said state claims cannot be pursued because it's a tariff claim. It's preempted by the filed rape doctrine. And that's a wrong answer. But I – because there was a conflicting precedent out there, I didn't want my judge to be confused by that. I wanted the statement from the – of the law from the FCC. Okay. Thank you. Thank you.
judges: Tatel, Griffith, Millett